**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

KEVIN DESHAWN SYKES, #419543,

        Petitioner,

v.                             Case No. 2:06-CV-12146
                                    Honorable Lawrence P. Zatkoff

HUGH WOLFENBARGER,

        Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION
FOR A WRIT OF HABEAS CORPUS</u>**

      Petitioner, Kevin DeShawn Sykes, is a state inmate currently incarcerated at Baraga Maximum Correctional Facility in Baraga, Michigan. Petitioner was convicted after a jury trial in Wayne County Circuit Court of two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He was sentenced as an habitual offender, second offense, to concurrent terms of thirty-nine to seventy years for each of the assault convictions, two to seven years for the felon in possession of a firearm conviction, and a consecutive two year term for the felony-firearm conviction.

      Petitioner has filed through counsel a petition for writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, the Court denies the petition.

## I. BACKGROUND

Petitioner's conviction arose from the shooting and wounding of a police officer who was responding to a police run at Page's Palace, a bar located in the City of Detroit. At approximately 1:45 a.m., after hearing a radio dispatch about a man with a gun at Page's Palace, Lieutenant Vicki Yost responded in plain clothes in a semi-marked vehicle. Upon arriving on the scene, she saw that Officer Frank Senter and Officer Collier were already on the scene outside of their vehicle with their weapons drawn. Lieutenant Yost exited her vehicle, noticed a man with an assault riffle down his pant leg, announced her presence, and shouted for him to drop the weapon. The man proceeded to raise the assault rifle and fired off several shots, one of which hit Lieutenant Yost in her right leg. She was subsequently rushed to Detroit Receiving Hospital and treated for her injury. The man, later identified in a photo array line-up as Petitioner, fled the scene.

Petitioner's defense was one of misidentification. He presented evidence to show the jury that he was not the shooter. Despite this defense, the jury found Petitioner guilty of the above referenced offenses. As part of Petitioner's appeal of right, he filed a motion with the Michigan Court of Appeals for an evidentiary hearing regarding the ineffectiveness of his trial attorney. Petitioner claimed that his attorney failed to present an alibi defense. It was Petitioner's defense that he was with his friend, Dawnetha Washington (i.e., "Nickie") in Clarksburg, West Virginia at the time of the shooting. The Michigan Court of Appeals granted Petitioner's motion, and the issue was remanded for an evidentiary hearing before the trial court. At the conclusion of the hearing, the trial court found that Petitioner's trial attorney acted reasonably in his efforts to locate and produce Ms. Washington. Therefore,

2

Petitioner's motion for a new trial based on the ineffectiveness of his trial attorney was denied.

Following Petitioner's conviction, he filed a direct appeal with the Michigan Court of Appeals raising the following claims:

I. Was Defendant Sykes denied a fundamentally fair trial by the prosecutor's misconduct that infected the entire trial?

II. Was Defendant Sykes deprived of his right to effective assistance of counsel, guaranteed by the United States and Michigan Constitutions, when his trial attorney failed to (a) investigate and produce an alibi witness, (b) seek suppression of a suggestive out-of-court identification procedure, (c) object to an erroneous and prejudicial jury instruction, (d) object to prosecutorial misconduct, and (e) object to the inaccurate scoring of the guidelines, resulting in a sentence outside the appropriate guideline range?

III. Was Defendant Sykes denied a fair trial and his right of confrontation when the officer in charge was allowed to testify through hearsay that other suspects had been eliminated, which also constituted an impermissible opinion regarding the defendant's guilt?

IV. Was Defendant Sykes denied a fair trial when the jury was instructed that an element of the charge of felon in possession was that he had been convicted of felonious assault, when the parties had previously stipulated to Defendant's prior felony conviction?

V. Was Defendant Sykes denied due process and a fair trial when the trial court gave a coercive and erroneous felony firearm instruction?

VI. Was Defendant Sykes deprived of a fair and impartial jury when the trial court refused to excuse a juror who had expressed concern for her safety when a person, allegedly connected to the Defendant, approached and spoke to another juror outside the court room?

VII. Was Defendant Sykes denied due process of law at his sentencing when his sentencing was based on the inaccurate scoring of two (2) offense variables resulting in a sentence imposed outside the appropriate guideline range?

VIII Did the cumulative effect of the errors deprive Defendant Sykes of a fair trial under the state and federal Constitutions?

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Sykes*, No. 245256, 2004 WL 2102010 (Mich. Ct. App. Sept. 21, 2004). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same eight issues presented before the Michigan Court of Appeals, and added the following claim:

> Defendant was denied his right to a trial by jury when the sentencing judge enhanced his sentence, finding he acted with premeditation, a factor not submitted and decided by the jury.

The Michigan Supreme Court denied relief "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Sykes*, 472 Mich. 917; 696 NW2d 721 (2005) (table).

Petitioner then filed the present petition pursuant to 28 U.S.C. § 2254, raising all nine issues before this Court.

## II.  STANDARD

Petitioner is not entitled to the writ of habeas corpus unless the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A

4

state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

### III.  DISCUSSION

### A.  Prosecutorial Misconduct

Petitioner claims that the prosecutor engaged in misconduct in the following regard: (1) improper misrepresentation that the Petitioner intimidated witnesses; (2) improper introduction of prejudicial evidence;  (3) improper questioning of a law enforcement witness regarding the scope of the investigation; and (4) improper attacks on defense counsel.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).

First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1)

5

whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before a jury; and (4) the total strength of the evidence against the accused. *Id.*; *see Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

### 1. *Witness Intimidation*

In support of Petitioner's claim that the prosecutor led the jurors to believe that he had intimidated witnesses for the prosecution, Petitioner states as follows:

> The prosecutor began questioning of her very first witness, Adonis Davis[1], about the non-appearance at trial of his nephew, Antonio Davis. Davis owned the van that the Petitioner was allegedly entering before the shooting. The prosecutor then asked Davis if he was approached in the hallway by a man who was a friend or relative of the Petitioner and that she (the prosecutor) asked him not to have any contact with Davis. When Davis answered in the affirmative, she elicited that she had asked him to go to the witness room and he was "arrested and put in a cell to move you away from this young man . . . ." Defense counsel moved for a mistrial because "the jury has been painted with a picture that my client has strong armed men out there, intimidating witnesses."

(Pet. at 20) (trial transcript references omitted). Petitioner also asserts that the prosecutor established through her questioning of Adonis Davis that another one of his nephews, Adonis Finney, also knew Petitioner and was also to be a witness in his case, but did not

---

[1]Adonis Davis knew Petitioner and claimed to have seen him on the night of the shooting. Petitioner's defense is that he was not at the bar on the evening in question and that he is the victim of misidentification.

appear. Therefore, it is Petitioner's position that the prosecutor erroneously insinuated that

Petitioner intimidated these witnesses from testifying.

> The Michigan Court of Appeals rejected this argument finding that:

>> Our review of the prosecutor's questioning of Adonis Davis fails to disclose that the prosecutor violated this rule. The prosecutor's questions did not suggest improper intimidation. Rather, the prosecutor questioned the witness in an attempt to elicit information suggesting his possible bias. Evidence of a witness' bias is almost always relevant and a proper subject of examination. Further, the questioning was responsive to issues raised by the defense. For these reasons, this issue does not warrant reversal.

*Sykes,* 2004 WL 2102010 ,*1.

> Reading the direct and cross examination of Adonis Davis in context, it is apparent

to the Court that the prosecutor's line of questioning was geared toward establishing, in

part, Adonis Davis' reluctance to testify against Petitioner at trial, as well as the reluctance

of Antonio Davis and Adonis Finney. Adonis Davis had known Petitioner for ten years. His

nephews also knew Petitioner. The trial court noted in response to defense counsel's

objection to the line of questioning as follows:

>> But that actually seems like the direction it's going is the attitude of this witness, and whether he is here by his own will and whether he is cooperating with testifying or not.

>> I don't think I heard anything in that regard that he was being forced or strong armed, as much as his action of refusing to go in the jury room. Anything else can go towards – you can cross-examine, but at this point it appears to be his will and his cooperation; and his willingness to cooperate.

(Trial Tr. Vol. I, pg. 109). The Court agrees. The prosecution's line of questioning was an

attempt to establish reluctance by Adonis Davis to testify due to his friendship with or

allegiance to the Petitioner. *Id.* at 103-26. It was defense counsel who raised the issue of

"fear" being a motivating factor relative to Adonis Davis' reluctance to testify. *Id.* at 153.

7

The prosecutor followed up on defense counsel's line of questioning by pointing out that "the witness may not have admitted to fear even if he felt it. Unlike defense counsel, the prosecutor's questions explored a bias *toward* [Petitioner], not necessarily a fear of him." [Plaintiff-Appellee's Answer to Defendant's Application for Leave to Appeal, pg. 16].

Accordingly, the Court does not find that the prosecutor engaged in any misconduct by creating an illusion that Petitioner was intimidating witnesses.

### 2. Admission of Prejudicial Evidence

Petitioner next argues that the prosecutor's questioning about irrelevant and prejudicial evidence regarding Petitioner's involvement in a drug raid several years ago resulted in an unfair trial warranting habeas relief. Petitioner states as follows:

> When questioning Davis about Petitioner Sykes, the prosecutor elicited, over objection, that Davis told the police he knew Petitioner had been shot in a drug raid at a drug house in 1998. In her closing argument, she returned to this subject arguing that Davis had known Petitioner as "Stephen; know that was the guy who got shot in the drug raid."

(Pet. at 22). The Michigan Court of Appeals disagreed stating:

> In this case, however, the prosecutor's question was relevant to Davis' credibility, given Davis' prior testimony wherein he denied giving the police information condemning defendant. Further, the question focused only on what information Davis gave to the police, not whether the information was true, thereby minimizing any prejudice. Similarly the prosecutor merely commented on this testimony in her rebuttal argument, the comment was brief, and the comment was again made solely in the context of discussing Davis' credibility. Considered in this context, the prosecutor's conduct did not deny defendant a fair trial.

*Sykes,* 2004 WL 2102010 ,*1.

In deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). Where a prosecutor's conduct does not have a substantial

or injurious effect on the outcome of the trial, habeas relief should be denied. *See Maurino v. Johnson*, 210 F.3d 638, 644 (6th Cir. 2000).

In the present case, assuming that it was improper for the prosecutor to bring up Petitioner being shot in a drug raid approximately ten years previously, Petitioner is unable to show that this comment had a substantial or injurious influence on the jurors. The victim, Lieutenant Yost, testified at trial that she was "absolutely one hundred percent sure, as sure as he is sitting here today, that that is the man [Petitioner] that shot me." (Trial Tr., Vol. II, pp. 79). Officer Senter testified that immediately after the shooting, he saw Petitioner holding a raised gun pointed in Lieutenant Yost's direction. (Trial Tr., Vol. I, pp. 171-72). Officer Senter immediately identified and selected Petitioner as the shooter from a photo-lineup. (Trial Tr., Vol. II, pp. 92). Adonis Finney, a long time friend of Petitioner's, testified that Petitioner was at the bar on the night of the shooting.[2] (Trial Tr., Vol. III, pg. 114). Two employees of the bar identified the shooter as wearing a beige jacket with a fur hood, and Adonis Finney testified that Petitioner was wearing a beige jacket with a fur hood on the night of the shooting. (Trial Tr., Vol. I, pp. 113, 156 & 162).

In light of the strong evidence of Petitioner's guilt in this case, the prosecutor's comments in his closing arguments regarding Petitioner being shot in a ten year old drug raid did not rise to the level of reversible prosecutorial misconduct. *See Cristini v. McKee,* 526 F.3d 888, 900 (6th Cir. 2008). For these reasons, Petitioner cannot assert that his constitutional rights were violated by the prosecutor's conduct, and habeas relief is denied as to this claim.

---

[2]Petitioner claims that he was out of state visiting his girlfriend on the night of the shooting.

9

### 3. Improper Identification of Petitioner as the Shooter

Petitioner asserts that the prosecutor improperly questioned Sergeant Christopher Vintevoghel about a witness statement from Tyrone Moore, an associate of Petitioner's. Tyrone Moore was subpoenaed to testify for the prosecution, but did not appear.

Because approximately twenty-five individuals were arrested in connection with Lieutenant Yost's shooting, the prosecutor engaged in a line of questioning geared toward establishing how everyone but Petitioner were eliminated as suspects. Sergeant Vintevoghel was then questioned about police reports that he reviewed. The sergeant stated that among them he had a witness statement from Tyrone Moore. The prosecutor asked Sergeant Vintevoghel if Tyrone Moore identified Petitioner as the shooter. Defense counsel objected to any questioning regarding Tyrone Moore's statement on hearsay grounds and due to the fact that Tyrone Moore's statement was allegedly not produced during the discovery process. The jury was excused so that a discussion on the record could take place regarding the admission of evidence relative to Tyrone Moore's statement. The trial court sustained the objection but ruled as follows:

> As to Tyrone Moore, the Court is going to limit the testimony, limit the testimony as to Tyrone Moore to the issue that defense counsel did open the door to.
>
> Defendant counsel did bring up the issue of Tyrone Moore; why he was eliminated – that the people who were out there, not naming specifically Tyrone Moore. We know that, because Tyrone Moore, you weren't given a witness statement on.
>
> But as far as people and why they were eliminated, generally, based on the investigation, the Court will allow it.
>
> As to what Tyrone Moore said, and specifically Tyrone Moore identifying the Defendant, even though defense counsel may have gone further than

10

allowed, that in no way opens the door to an identification of the defendant
as the perpetrator of this crime, without having that person here.

The Court is not going to allow that.  It's gong to be more prejudicial than
probative.

(Trial Tr., Vol. III, pp. 99-100).

In the presence of the jury, the prosecutor then questioned Sergeant Vintevoghel

as follows:

Q: Once again, through your investigation did you determine that there
was a connection between Tyrone Moore and the Petitioner, Kevin
Sykes?

A: Yes.

Q: And as it relates to the investigation of Tyrone Moore, after receiving
information from him did you eliminate other suspects?

A: That assisted, in part.

Q: And as it relates to Tyrone Moore, based on the information he had to
give, did you find it to be relevant in this case?

A: Yes.

Q: And did you attempt to subpoena him to trial?

A: Yes.

Q: Has he shown up?

A: No.

(Trial Tr., Vol. III, pg. 103).

Petitioner asserts that this line of questioning rises to the level of prosecutorial

misconduct because the prosecutor indirectly and through innuendo presented to the

jury evidence that Tyrone Moore identified Petitioner as the shooter despite the ruling of

11

the trial court precluding the admission of such testimony.  The Michigan Court of

Appeals disagreed:

> The record discloses that the prosecutor fully complied with the trial
> court's ruling with respect to the questioning of this witness and, therefore,
> did not engage in misconduct.  Contrary to what defendant asserts, the
> officer did not testify that another witness had identified defendant as the
> shooter.  This claim also fails because defendant fails to cite any authority
> in support of his claim that the challenged testimony was inadmissible.

*Sykes,* 2004 WL 2102010 ,*2.

The Court agrees.  The sum and substance of Sergeant Vintevoghel's testimony is

that Tyrone Moore's statement assisted them "in part" in eliminating "generally" other

suspects. This testimony is completely within the parameters of the trial court's ruling

relative to the limits of questioning regarding Tyrone Moore.  Accordingly, the Court does

not find that the prosecutor acted improperly during Sergeant Vintevoghel's examination.

### 4.  Denigration of Defense Counsel

Petitioner next claims that the prosecutor improperly attacked defense counsel by

accusing him of knowing Petitioner was guilty and intentionally misleading the jury to

believe otherwise. The statements made by the prosecutor during her rebuttal closing

argument at issue are as follows:

> Vicki Yost who was shot at, said he had a medium to heavy build.  Why is
> counsel misstating the testimony?  Why is he misleading you?  You don't
> have to mislead to protect an innocent man. You only have to mislead and
> misstate to protect the guilty.

(Trial Tr. Vol. IV, pg. 71)

> So another example of how counsel tries to mislead you or mistake the
> evidence is the whole issue about gloves.  There was no testimony one way
> or another about whether the shooter had on gloves.

12

(Trial Tr. Vol. IV, pp. 77-78).

> Not that some fingerprints were found didn't match the defendant, but that nobody's fingerprints were on that gun. That just goes to show you what a skilled criminal the defendant is, as he sits here and smiles in court.

(Trial Tr. Vol. IV, pg. 78)

The Michigan Court of Appeals found that this issue had not been preserved for appellate review and in any event was without merit:

> Because defendant did not object to the prosecutor's remarks at trial, we review this unpreserved issue for plain error.  A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury .  But where the prosecutor's comments are made in response to defense counsel's argument, reversal is not required.  In this case, the challenged remarks were made during rebuttal closing argument and were responsive to defense counsel's closing arguments.  Moreover, the remarks were focused on the evidence, not defense counsel's personality. Thus, viewed in context, the remarks do not warrant reversal.

*Sykes,* 2004 WL 2102010 ,*2.

### a.  Procedural Default

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006), *cert. denied*, 549 U.S.1047 (2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the

13

case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In denying relief on this claim, the court relied upon Petitioner's failure to object to the prosecutor's alleged multiple acts of misconduct. *Id.*  The failure to make a contemporaneous objection is a recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

The Michigan Court of Appeals denied this claim based upon a procedural default – the failure to properly object at trial. A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for

noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

However, given that the cause and prejudice inquiry merges with an analysis of the merits of Petitioner's defaulted claim, the Court concludes that it would be most efficient to simply consider the merits of the claim.

### i. Substantive Analysis of Denigration of Defense Counsel Claim

Although Petitioner correctly notes that a prosecutor may not suggest that defendant's trial counsel is intentionally attempting to mislead the jury, prosecutors are accorded great latitude regarding their arguments and conduct. For this reason, this Court will not review the prosecutor's remarks in a vacuum; the remarks must be read in context. The scope of the review is important, because an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument. Taken in context, the prosecutor's remarks were in response to defense counsel's statements during his closing argument: (1) all of the witnesses described the shooter as having a slim build; and (2) his insinuations that since no finger prints were

found on the gun, then Petitioner could not be found guilty. (Trial Tr. Vol. IV, pp. 52, 59-60, 64). Therefore, there was no plain error. Even if the Michigan Court of Appeals were to have found that these comments constituted plain error, it is unlikely that these isolated comments affected the outcome of the trial given the highly credible testimony of the eyewitnesses who each corroborated, directly or circumstantially, the fact that Petitioner was the shooter. Consequently, a new trial is not warranted.

The Court agrees. A review of the challenged statements which were made during the prosecutor's rebuttal closing argument does not reveal such severe, pervasive, and inflammatory denigrating comments so as to render Petitioner's trial fundamentally unfair. Prosecutors are ordinarily "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel," as well as to the defense's trial strategy. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000). The Court does not find that the prosecutor's remarks were inappropriate or exceeded the bounds of fair advocacy. In addition, the jury was instructed that the attorney's statements and arguments were not evidence. (Trial Tr. Vol. IV, pg. 83). Therefore, the prosecutor's closing rebuttal argument did not abridge the Petitioner's right to a fair trial. Petitioner is therefore not entitled to habeas relief on this ground.

### B. Ineffective Assistance of Counsel

#### *1. Alibi Witness*

Petitioner claims that trial counsel was ineffective for failing to investigate and produce Petitioner's alibi witness, Dawnetha Washington, who is a good friend of Petitioner's. Petitioner asserts that Ms. Washington would have corroborated his story that he was not at the bar on the night of the shooting. The Michigan Court of Appeals did not

16

find Petitioner's argument persuasive:

> In this case, the record discloses that defense counsel attempted to contact the alleged alibi witness, who lived in West Virginia. Counsel also hired an investigator that he had used in the past who also attempted to contact the witness. According to both defense counsel and the investigator, the witness did not return their phone calls or respond to messages they left. Counsel explained that he did not subpoena the witness because the witness never contacted him and he did not want an unknown witness to come to trial and provide testimony that might backfire. On this record, we cannot conclude that counsel was deficient in his efforts to locate and call the witness.

*Sykes,* 2004 WL 2102010 ,*5.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

17

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996). Under *Strickland,* a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, although such decisions must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The failure to call witnesses or present other evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense. *See Hutchison,* 303 F.3d at 749. Counsel may be deficient for failing to call witnesses whose testimony would corroborate the defendant's version of events, if such evidence is not merely cumulative. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 358-59 (6th Cir. 2007) (ruling that testimony of two alibi witnesses was not cumulative to the defendant's own testimony); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992) (finding ineffective assistance of counsel based on counsel's failure to interview witnesses who would corroborate the defendant's account of events).

In this case, however, the record belies Petitioner's argument. The investigator

18

testified at a motion hearing for a new trial that he called Ms. Washington and left several messages and at one point actually spoke to a person who told him that his message would be given to Ms. Washington (Mot. Tr. 4/22/04, pp. 14-15).  Ms. Washington admits that she spoke with defense counsel, but claims that he never requested that she testify on Petitioner's behalf.  *Id.*  at 38.  Ms. Washington admits that although she knew Petitioner was convicted and sentenced, she made no effort to alert the trial court or anyone else working on Petitioner's behalf  that Petitioner was innocent and was with her on the night of the shooting.  *Id.*  at 40.  Ms. Washington admits that once Petitioner obtained new counsel and was contacted by him, she failed to sign an affidavit that was sent to her by counsel which would have exonerated Petitioner; she failed on three occasions to appear for hearings to testify on Petitioner's behalf as his alibi witness. *Id.* at 41.

Petitioner's first defense counsel testified at an evidentiary hearing that he made several attempts to contact Ms. Washington by phone, and she was not returning his calls and not making herself available as a witness on Petitioner's behalf.  (Mot. Tr. 3/26/04, pg. 12).  Therefore, he was apprehensive about her being a reliable alibi witness.  *Id.* Petitioner argues that Petitioner's first defense counsel and the investigator's efforts in locating Ms. Washington were deficient because they only called and left messages as opposed to sending letters or physically going to Ms. Washington's home.   The opposing  argument on this issue is that Ms. Washington was supposed to be a close friend of Petitioner who would want to help.  She was not a stranger where it was necessary to physically track her down or where a copious paper trail was necessary to maintain in order to demonstrate initial defense counsel and the investigator's efforts in locating Ms. Washington.  Therefore, phone calls would be a reasonable means of attempting to make contact.

19

Although the Court agrees that the investigator's record keeping appeared to be lacking in several respects, the Court finds that the testimony of the investigator coupled with that of Petitioner's original attorney and Ms. Washington's actions (i.e., dilatory in appearing on Petitioner's behalf) after it was clear that she knew Petitioner's plight and that her testimony was needed, support the reasonableness of the original defense counsel's efforts in attempting to secure Petitioner's alibi witness. Therefore, the Court finds that Petitioner's ineffective assistance of counsel claim as to this issue is without merit.

### *2. Suggestive Out-of-Court Identification*

Petitioner next claims that trial counsel was ineffective "for not attempting to suppress the identification evidence on the basis that a pre-trial photographic lineup was unduly suggestive." *Sykes,* 2004 WL 2102010,*5. The Michigan Court of Appeals rejected Petitioner's argument and stated as follows:

> In arguing that the photographic lineup was improper, defendant relies on testimony by the lineup attorney that described defendant's photo as "looking all goofy, head cocked to the side, mouth wide open." That defendant looked this way does not support a claim that the lineup was impermissibly suggestive. Indeed, the lineup attorney testified that she reviewed the lineup to make sure that no photo stood out and she thought it was fair. There is nothing indicating that the witnesses singled out defendant because of the way he looked. Accordingly, there is no basis for concluding that defense counsel was ineffective for failing to challenge the identification evidence. Counsel is not required to make a frivolous or meritless motion.

*Id.* (internal citation omitted).

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an

impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968). A suggestive line-up or photo array alone, however, does not require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite,* 432 U.S. 98, 106 (1977). The key, however, is whether there was "a very substantial likelihood of irreparable misidentification." *Id.* at 116; *Simmons v. United States,* 390 U.S. 377, 384 (1968). Thus, the central question where the pre-trial identification procedure is impermissibly suggestive, is "whether under the 'totality of the circumstances' the identification was reliable even though the [ ] procedure was suggestive." *Neil v. Biggers,* 409 U.S. 188, 199 (1972).

Five factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. The court engages in a balancing test, weighing the factors listed in *Neil v. Biggers, supra,* against the "corrupting effect of the suggestive identification itself." *Manson v. Brathwaite,* 432 U.S. at 114. Thus, a court must "follow[ ] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier,* 259 F.3d 503, 510 (6th Cir. 2001).

First the court must "consider whether the identification procedure was suggestive."

21

*Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera,* 922 F.2d 934, 973 (2d cir. 1990).   Accordingly, there would be no basis upon which counsel would have to move to suppress such a pre-trial identification. If on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.   Reliability "is the linchpin in determining the admissibility of identification testimony." *Manson,* 432 U.S. at 114.

Here, Petitioner has not demonstrated that under the "totality of the circumstances" the identification was unreliable.  Although the attorney testified that Petitioner's photo stood out somewhat because of the "goofy" nature of the photo, the attorney also testified that the line up was fair and that she did what she could to ensure it was a fair lineup and that Petitioner's rights were protected.  (Tr. , Vol. II 6/25/02, pp. 90, 115).  She also testified that she placed no written objection with anyone regarding the validity of the lineup, nor did she follow any procedures in an effort void the lineup.  *Id.*  at 114-15.  Finally, the attorney noted that immediate I.D.'s of Petitioner by witnesses were made.  *Id.*  at 92.  Therefore, the Court does not find that the photo lineup process in this case produced a "substantial likelihood of irreparable misidentification."  *Manson,* 432 U.S. at 116; *Simmons v. United States,* 390 U.S. 377, 384 (1968).   Accordingly, the Court  finds that the identification procedure was not impermissibly suggestive.

### 3.  Erroneous & Prejudicial Jury Instructions

Petitioner next claims that trial counsel was ineffective for failing to object to the trial

22

court's jury instructions on the felon in possession and felony-firearm charges. For the reasons set forth *infra*, the Court does not find that the jury instructions as read by the trial court warrant reversal of Petitioner's conviction. Therefore, the Court does not find that defense counsel was ineffective for not objecting to the instructions at issue.

### 4. Prosecutorial Misconduct

For the reasons set forth above, the Court finds that the prosecutor did not engage in any misconduct. Therefore, defense counsel was not ineffective for failing to object to the disputed actions of the prosecutor in this case. Defense counsel was not under any obligation to pursue a frivolous claim or one that lacked merit by placing objections on the record. *See United States v. Hanley,* 906 F.2d 1116, 1121 (6th Cir. 1990). Accordingly, defense counsel was not ineffective for failing to challenge the prosecutor's conduct in this case.

### 5. Improper Sentence

For the reasons, *infra,* the Court does not find merit in Petitioner's ineffective assistance of counsel claim as it relates to the sentence imposed upon Petitioner.

### 6. Cumulative Error

Petitioner lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel. Because the individual claims of ineffectiveness alleged by Petitioner are all essentially meritless or were of slight importance, Petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Alder v. Burt,* 240 F. Supp. 2d 651, 655 (E.D. Mich. 2003).

## C. Confrontation Clause Violation

Petitioner next argues that "his right of confrontation was violated because the officer in charge referred to other officers' police reports when explaining why persons were eliminated suspects." *Sykes,* 2004 WL 2102010 ,*2.  "The principle basis for [Petitioner's] claim is that the police reports were inadmissible hearsay."  *Id.*  Michigan Court of Appeals disagreed:

> In this case, the reports were not offered for the truth of the matters asserted therein, i.e., the descriptions of the suspects.  Rather, the officer referred to the police reports for the purpose of identifying the factual information on which the policed relied in eliminating other suspects as part of their investigation.  Thus, the reports were not used for an improper hearsay purpose.
>
> Further, there is no basis for concluding that defendant's right of confrontation was violated.  The right to confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness.  Although defendant complains that he was not able to cross-examine the authors of the various police reports, he never sought to call those officers at trial. The Confrontation Clause does not apply where the prosecution fails to call certain witnesses that the defendant could have called to testify.  Because defendant does not claim that he was prohibited from calling and confronting the authors of the various police reports, this claim fails.

*Id.* (internal citations omitted)

What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich.2004)(internal citations omitted). The Michigan Court of Appeals determined that it was proper to admit testimony derived from the referenced police reports as non-hearsay evidence. A federal habeas court is bound by a state appellate court's ruling that certain testimony is not hearsay, because state law governs questions concerning

24

the admissibility of evidence. *Id.* at 706. Petitioner's claim that the trial court violated his right of confrontation when it admitted the police report evidence as non-hearsay evidence raises only an error of state law that is noncognizable in federal habeas review. *See David v. Lavinge,* 190 F. Supp. 2d 974, 981-82 (E.D. Mich. 2002). Therefore, the grounds upon which Petitioner's Confrontation Clause argument is based  is not a cognizable habeas claim.

Nonetheless, Petitioner contends that the admission of the police report evidence violated his Sixth Amendment right to confrontation. Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U.S. 813 (2006).

"The Sixth Amendment is not violated when a defendant chooses not to exercise his right to confront." *Harris v. Straub,*  2001 WL 739553, *8  (E.D. Mich. May 8, 2001).  The Confrontation Clause is not violated when a defendant fails to call a witness to challenge alleged hearsay testimony from a police officer.  *United States v. Green,* 178 F.3d 1099, 1109 (10th Cir. 1999).  In this case, there are no allegations that the declarants (i.e., police officers) of the police report evidence were

25

unavailable or that the prosecution or the trial court in some way impeded Petitioner's access to these police officers.   There is no evidence that the prosecution's failure to call the authors of the police reports was induced by some improper motive, nor was the prosecution required to produce these witnesses. Petitioner could have called these law enforcement witnesses if he chose to do so. "[T]he Confrontation Clause guarantees 'an *opportunity* for effective cross-examination . . . ." *See United States v. Owens*, 484 U.S. 554, 559 (1988) (emphasis in the original).  Therefore, Petitioner's "right of confrontation was satisfied by this available opportunity." *See Harris,* 2001 WL 739553, *8.  Accordingly, Petitioner's habeas claim relative to this issue is denied.

### D.  Erroneous Jury Instructions Regarding Felonious Assault & Felony Firearm

#### 1. Procedural Default

The jury instruction claim at issue is procedurally defaulted, the doctrine of which is set forth, *supra* (i.e., section III(A)(4)(a)).   The fact that the state court of appeals engaged in plain error review of the jury instruction claim does not constitute a waiver of the state procedural default. *See Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001). Therefore, this Court may not review Petitioner's jury instruction claim unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice.

26

*Coleman*, 501 U.S. at 750.  For the reasons set forth in the previous procedural default discussion, the Court concludes that it would be most efficient to simply consider the merits of the issue.

Petitioner claims that the trial court erred in two instances during its charge to the jury.  First,  it indicated to the jury that Petitioner had been convicted of felonious assault. Second, the court gave a coercive and erroneous felony firearm instruction.  Although the Michigan Court of Appeals agreed that the trial court committed plain error when it indicated to the jury that Petitioner had previously been convicted of felonious assault where the parties only stipulated that Petitioner was previously convicted of an unspecified felony, it did not agree that the error warranted a reversal of Petitioner's conviction:

> But considering that the disclosure was inadvertent and isolated, that there was no suggestion that the nature of the prior conviction as opposed to the fact of the conviction itself made it more likely that defendant was guilty of the charged assault offenses, and the substantial evidence of defendant's  guilt, we conclude that the error did not affect the outcome.  Therefore, this unpreserved issue does not warrant reversal.

*Sykes,* 2004 WL 2102010 ,*3 (internal citation omitted).

Relative to the felony-firearm jury instruction, the Michigan Court of Appeals did not agree with Petitioner's argument:

> The trial court's jury instructions did not require the jury to convict defendant of assault with intent to commit murder, to the exclusion of the lesser offense of assault with intent to do great bodily harm, in order to convict defendant of felony-firearm.  On the contrary, the court expressly instructed the jury that "it is *not* necessary, however, that the defendant be convicted of that crime" (assault with intent to commit murder) in order to convict him of felony-firearm.  Accordingly, there was no plain error.

*Id.*

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction

27

is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977). *See Terry v. Bock,* 208 F. Supp. 2d 780, 793 (E.D. Mich. 2002). The challenged instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000). Allegations of trial error raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id.* Finally, federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Regarding the felonious assault instruction, Petitioner claims that although the parties stipulated that Petitioner was previously convicted of an unspecified felony, it was not harmless error for the trial court to tell the jurors that the felony Petitioner was convicted of was felonious assault. The instruction in dispute is as follows:

The defendant is charged on count 3, with felon in possession of a firearm.

To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant possessed a firearm in this state;

Second, that the defendant was convicted of felonious assault;

Third, that less than 3 years had passed since all fines were paid or imprisonment served, or all terms of probation completed.

(Tr. 6/27/02, pp. 94-95).

Lieutenant Yost and Sergeant Senter provided direct evidence against Petitioner as they positively identified him as the shooter. Also, the combined testimony of Petitioner's friend Adonis Davis and two employees who were working at the bar on the night in question provide strong circumstantial evidence against Petitioner. Based upon the evidence against Petitioner, the trial court's "inadvertent and isolated" instruction regarding Petitioner's felonious assault conviction did not substantially injure or affect or influence the the verdict. Therefore, habeas relief is denied on this issue.

Regarding felony-firearm instruction, Petitioner asserts that while instructing the jury on the elements of the felony firearm charge, it "informed the jury that an essential element was that the Petitioner committed or attempted to commit the crime of assault with intent to murder." (Pet. at 51). Petitioner further argues that the "instruction is coercive because it required the jury to convict of the principal offenses of assault with intent to murder, to the exclusion of the lesser offense." *Id.* The instruction that is in dispute is as follows::

The defendant is charged on Count 4 with the separate crime of possessing a firearm at the time he committed or attempted to commit a felony, to wit: assault with intent to murder.

To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant committed or attempted to commit the crime of assault with intent murder, which has been defined for you. It is not necessary however, that the defendant be convicted of the crime;

29

> Second, that at the time the defendant committed or attempted to commit the crime, he knowingly carried or possessed a firearm.  I[t] does not matter whether or not  the gun was loaded.  A firearm includes any weapon from which a dangerous object can be shot or propelled by the use of explosives, gas or air.

(Tr. 6/27/02, pp. 94-95).  The Court concludes the jury instruction did not coerce the verdict in this case.  The instructions, taken as a whole, adequately informed the jurors of the felony-firearm charge.  The jurors were not told that they had to convict Petitioner of assault with intent to commit murder to the exclusion of lesser offenses.  No rational jurors would interpret the above referenced jury instructions as coercive.  In fact, the trial court specifically states in its instructions that it is not necessary for the jury to find Petitioner guilty of assault with intent to commit murder in order to find him guilty of felony-firearm.  *Id.*   Therefore, habeas relief is not warranted on this jury instruction claim.

## E.  Impartial Jury

Petitioner contends that habeas relief is warranted because "the trial court refused to excuse a juror who expressed concern for her safety after she observed an interaction between defendant's relatives and another juror."  *Sykes,* 2004 WL 2102010 ,*4.  As a result, there was juror bias and a partial jury panel chose to convict Petitioner for criminal offenses he claims he did not commit.  The Michigan Court of Appeals rejected Petitioner's argument as follows:

> In this case, the juror viewed an altercation involving defendant's relatives, but admitted that nothing was said to her and that no one attempted to touch her or threaten her.  She stated that she would be able to focus on the case with an open mind and remain  impartial.  On the record, defendant has failed to show actual prejudice or that the juror was properly excusable for cause.  The trial court did not abuse its discretion in refusing to excuse her.

*Id.*

30

The Sixth Amendment to the United States Constitution guarantees a criminal defendant a trial by an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *See Morgan*, 504 U.S. at 729. *Williams v. Bagley*, 380 F.3d 932, 943-34 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005).

*McDonough Power Equipment, Inc., v. Greenwood,* 464 U.S. 548, 554 (1984) "is not the exclusive test for determining whether a new trial is warranted: a showing that a juror was actually biased, regardless of whether the juror was truthful or deceitful, can also entitle a defendant to a new trial." *Jones v. Cooper*, 311 F.3d 306, 310 (4th Cir. 2002). In other words, "*McDonough* does not entirely foreclose a party from seeking a new trial on the basis of a prospective juror's honest, though mistaken, response." *Zerka v. Green*, 49 F.3d 1181, 1186 n.7 (6th Cir. 1995) (citing *Amirault v. Fair*, 968 F.2d 1404, 1405-06 (1st Cir. 1992)). However, "[i]n the absence of intentional concealment, only extreme circumstances justify a new trial," and the petitioner must prove "actual juror bias." *Id.*

Jurors are presumed to be impartial. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961). "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . Due process means a jury capable and willing to decide the case solely on the evidence before it . . . ." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A juror must be able to "lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. at 723.

A biased juror, in the usual sense, "is one who has a predisposition against or in

31

favor of the defendant. In a more limited sense, a biased juror is one who cannot 'conscientiously apply the law and find the facts.'" *Franklin v. Anderson*, 434 F.3d 412, 422 (6th Cir. 2006) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). "If an impaneled juror was actually biased, the conviction must be set aside." *Hughes v. United States,* 258 F.3d 453, 463 (6th Cir. 2001).

Specifically, Juror #5's issue in this case was as follows:

As we were leaving, as we got into our cars, there were three  guys staring at us that were in the courtroom.  As we are in the parking lot, the far right, we get to our cars, and as we are going to exit we are stopped; for some reason you can't go.

\*   \*   \*

Right, well, you can't pass a car, and the other gentleman that was in the room, the bald guy, the bigger, stocky guy, comes running up from the back the other guys are coming from the front.  I don't know what to expect. and he starts yelling at the car behind me, which is a juror.  He was apologizing for a witness, the girl, yesterday.  I don't know what else was said.

I mean, I just looked in the back, pretended like I was on the phone, and like I couldn't see anything.  I was looking out the [rear view] window.  I had my mirror there.  He could easily come up to our car, and do something.

(Tr. 6/27/02, pp. 4-5).

"The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility." *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000) (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003). In response to the trial court's inquiry about  whether she could continue to perform her duties as a juror, she said:

That's not a problem.  I just don't – That's fine.  As long as I feel safe like getting to my car and leaving this parking lot.

I mean I am completely fine focusing on the matter at hand.

(Tr. 6/27/02, pg. 5).  Therefore, the trial court's determination that Juror #5 was a fair and

impartial juror is entitled to a presumption of correctness unless Petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003).

Moreover, Petitioner has not demonstrated that Juror #5 was "actually biased." Aside from the argument that she appeared shaken up and did not feel safe, there has been no showing of how those facts produced a bias against Petitioner. Therefore, habeas relief is denied relative to this issue.

### F.  Sentencing Guideline & Enhancement Violation

Petitioner's habeas claims attack the legality of Petitioner's sentence. Petitioner alleges that: (1) Offense Variables OV 6 and OV 19 were incorrectly scored which resulted in the imposition of a sentence outside of the appropriate sentencing guidelines;  and (2) the trial court improperly enhanced Petitioner's sentence by finding that he acted with premeditation.

### 1.  State Law Claim

Questions of state sentencing law, and the scoring of state sentencing guidelines in particular, are not cognizable on federal habeas corpus review. *Miller v. Vasquez,* 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Long v. Stovall,* 450 F. Supp. 2d 746, 754 (E.D. Mich. 2006). As succinctly explained by the Sixth Circuit, "[a] state court's alleged misinterpretation of state sentencing guidelines and crediting status is a matter . . . of state concern only." *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003)*,* citing *Travis v. Lockhart,* 925 F.2d 1095, 1097 (8th Cir. 1991); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988).  "[F]ederal habeas corpus relief does not lie for errors of state law . . . ." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). Therefore, to the extent that Petitioner raises his sentencing claim in the context of a state law violation, habeas relief is not warranted.

### 2.  Due Process Claim

To the extent Petitioner seeks to "federalize" his sentencing claim, by fashioning a due process argument, a sentence violates due process if it is based on "misinformation of constitutional magnitude," *Roberts v. United States,* 445 U.S. 552, 556 (1980), or "extensively and materially false" information, with no opportunity to correct it. *Townsend v. Burke,* 334 U.S. 736, 741 (1948).

> Relative to OV6, Petitioner makes that following argument:
>
> Offense Variable six (6) entitled, "Intent to Kill or Injure Another individual" assigns fifty (50) points if "the offender had premeditated intent to kill," twenty-[five] (25) points if the offender had a "unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." and ten (10) points if the offender intended to injure.
>
> \*   \*   \*
>
> However, as a matter of law, the Court was <u>precluded</u> from scoring the variable higher than and inconsistent with the jury verdict of an intent to kill consistent <u>only</u> with second degree murder and a score of twenty-five (25) points.

(Pet. 58-59)

> Relative to OV19[3], Petitioner makes the following argument:
>
> Offense variable nineteen (19) was scored fifteen (15) points . . . The variable is entitled "Threat to the Security of a Penal Institution or Court or Interfering

---

[3]Petitioner did not object to the scoring of OV19 and therefore the issue is procedurally defaulted.  However, for reasons set forth in section III(A)(4)(a), the merits of this sentence scoring issue will be considered.

with the Administration of Justice or Rendering of Emergency Service. Fifteen (15) points would be assessed if: "[t]he offender used force or the threat of force against another person or the property of another person to interfere with or attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency service." The court should have assessed zero (0) points for this variable. Interfering with the administration of justice under this variable involves an effort to undermine or prohibit the judicial process. Since a penal institution was not involved, nor the rendering of an emergency service, the offense variable did not apply.

*(Id.* at 60-61)(citations omitted).

At sentencing the trial court stated as follows relative to the scoring of OV6:

The Court in assessing the entirety of the circumstances here and the information  given to the Court at this time does find that 50 points is applicable here because in this case there was specific testimony and evidence that there was tracking and multiple gunshots to that vehicle, and the testimony of the officer in this case was such that this defendant looked at her and shot and tracked her as she tried to hide behind her car and behind the car door, and the circumstances do show in my mind the specific premeditated intent to kill.

(Tr. Sent. 7/24/02, pg. 11).  Since Petitioner did not have any objections to OV19, it was not a point of discussion during the sentencing hearing.

The Court concludes that Petitioner was not sentenced on the basis of "extensively and materially false" information, nor was his sentence based on "misinformation of constitutional magnitude,"  which he had no opportunity to correct. Therefore, Petitioner's constitutional right to due process was not violated by the trial court's scoring of the state sentencing guidelines, and habeas relief is denied.

### 3.  *Blakely v. Washington Claim*

The U.S. Supreme Court has held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven

beyond a reasonable doubt.   *Blakely v. Washington,* 542 U.S. 296, 301 (2004)(citing *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000)).   The Supreme "Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence."  *Cunningham v. California,* 549 U.S. 270, 281 (2007).  In other words, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant."  *Id.* at 274-75.

The problem with Petitioner's reliance on *Blakely* is that *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme.   Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence.   The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61; 715 N.W.2d 778 (2006); cert. den. sub nom *Drohan v. Michigan*, 549 U.S. 1037 (2006); *People v. Claypool,* 470 Mich. 715, 730, n.14; 684 N.W.2d 278 (2004) (both citing, MCL Mich. Comp. Laws § 769.8).   "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely,* create a range within which the trial court must set the minimum sentence."  *Drohan,* 475 Mich. at 161.   Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W.2d 231 (2003), citing Mich. Comp. Laws § 769.34(2).   Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence.   *Claypool,* 470 Mich. at 730., n. 14.

36

Michigan's indeterminate sentencing scheme is therefore unaffected by the U.S. Supreme Court's holding in *Blakely*.  *Drohan*, 475 Mich. at 164.

The decision in *Blakely* has no application to Petitioner's sentence.  Indeterminate sentencing schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury.  *See Blakely,* 542 U.S. at 304-05, 308-09.  Because *Apprendi* and *Blakely* do not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's calculation of Petitioner's sentencing guidelines range did not violate his Sixth Amendment rights.

The maximum penalty for assault with intent to commit murder  is life imprisonment. Mich. Comp. Laws § 750.83.  Since Petitioner was sentenced to concurrent terms of  thirty-nine to seventy years for that criminal offense, his sentence is well within the statutory maximum, and he is not entitled to habeas relief on any *Blakely* claims.  *See Stephenson v. Renico,* 280 F. Supp. 2d 661, 669 (E.D. Mich. 2003).

### G.  Cumulative Error

In Petitioner's last claim, he alleges that he was deprived of a fair trial because of the cumulative effect of the errors committed during the course of the trial. Because Petitioner's claims lack merit on habeas review, he cannot establish that habeas relief is warranted based upon a claim of cumulative error.  *See Gillard v. Mitchell,* 445 F.3d 883, 898 (6th Cir. 2006).  The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Therefore, Petitioner is not entitled to habeas relief on his cumulative error claim. *Id.; see also Salters v. Palmer,* 271 F. Supp. 2d 980, 992 (E.D. Mich. 2003).

**IV. CONCLUSION**

For the reasons stated above, **IT IS ORDERED** that the petition for a writ of habeas

corpus [Dkt. #1] is **DENIED**.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record
by electronic or U.S. mail on September 30, 2009.


S/Marie E. Verlinde
Case Manager
(810) 984-3290